Samuel A. Schwartz, Esq.                                                          E-Filed: May 10, 2013
Nevada Bar No. 10985
Sean E. McClenahan, Esq.
Nevada Bar No. 10141
The Schwartz Law Firm, Inc.
6623 Las Vegas Boulevard South
Suite 300
Las Vegas Nevada 89119
Telephone: (702) 385-5544
Facsimile: (702) 385-2741
Attorneys for the Debtor

## UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | Case No.: 12-10340-BTB |
| | ) | Chapter 11 |
| Gary S. Kibizoff, | ) | |
| | ) | |
| | ) | |
| Debtor. | ) | Hearing Date: |
| _____ | ) | Time of Hearing: |

### FIRST AMENDED PLAN OF REORGANIZATION OF GARY KIBIZOFF

ARTICLE I - SUMMARY

This First Amended Plan of Reorganization (the "**Plan**") under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") proposes to pay creditors of Gary Kibizoff, the above-captioned debtor and debtor-in-possession (the "**Debtor**") from the reorganization of his residential properties and secured debt.

This Plan provides for 1 class of secured claims and 2 classes of unsecured claims. Unsecured creditors holding allowed claims may receive distributions, if objections to the Plan are lodged under Section 1129(a)(15) of the Bankruptcy Code, which the Debtor valued at approximately two percent (2%) of each creditor's allowed claim. If no objections are lodged, the Debtor may elect to make zero distributions to general unsecured creditors. This Plan also provides for the payment of administrative and priority claims in full on the effective date of this Plan, or as agreed by the holder of such administrative or priority claim.

All creditors should refer to Articles II through IV of this Plan for information regarding the precise treatment of their claims. A Joint Disclosure Statement (the "**Disclosure Statement**") that provides more detailed information regarding this Plan and the rights of creditors was circulated with this Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.

ARTICLE II - CLASSIFICATION AND TREATMENT OF CLAIMS

This Plan constitutes the Chapter 11 plan of reorganization of the Debtor. All Claims against the Debtor are placed in classes (each a "**Class**") as designated by Classes 1 through 3. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims and Priority Tax Claims.

The categories of Claims (as defined in the Bankruptcy Code, listed below classify Claims for all purposes, including, without limitation, voting, confirmation and distribution pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim to be classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that any such Claim is allowed in that Class and has not been paid or otherwise settled prior to the effective date of the Plan as determined in paragraph 6.02 below.

**Classification of Claims**

> 2.01   Class 1(a) –Secured Claim of Bank of America.
>
>> (a)   *Classification*: Class 1(a) consists of the Secured Claim of Bank of America against the Debtor's property located at 4641 Clipper Drive, Discovery Bay, California 94505, which is secured by a lien against the Debtor's residential property, loan number *******6086.
>>
>> (b)   *Treatment*: The holder of the allowed Class 1(a) Secured Claim shall be impaired and paid in accordance with its election under Section 1111(b) of the Bankruptcy Code. Any prepetition default is hereby cured under the treatment in the Plan. In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second the contract between the parties, and last, if necessary or applicable, state law.
>>
>> (c)   *Valuation*: The Class 1(a) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan. The confirmation order approving the plan shall set forth the values of each secured creditor's first lien claim as of the effective date of the Plan.
>>
>> (d)   *Unsecured Portion of the Claim*: Any amount of a Class 1(a) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 3 below.
>>
>> (e)   *Voting*: Class 1(a) is an impaired class, and the holder of the Class 1(a) claim is entitled to vote to accept or reject the Plan.

Class 1(b) –Secured Claim of Bank of America

(a)     *Classification*: Class 1(b) consists of the Secured Claim of Bank of America against the Debtor's property located at 28 Del Oro Lagoon, Novato, California 94949, which is secured by a lien against the Debtor's residential property, loan number ********6378.

(b)     *Treatment*: The holder of the allowed Class 1(b) Secured Claim shall be impaired and paid the allowed amount of its claim of $647,000.00 as set forth in **Exhibit 1** attached to the Plan, paid at an interest rate of 4.75% over 30 years directly to Bank of America, for a monthly principal and interest payment of $3,375.06. Any prepetition default is hereby cured under the treatment in the Plan.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second the contract between the parties, and last, if necessary or applicable, state law.

(c)     *Valuation*: The Class 1(b) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the plan shall set forth the values of each secured creditor's first lien claim as of the effective date of the Plan.

(d)     *Unsecured Portion of the Claim*: Any amount of a Class 1(b) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 3 below.

(e)     *Voting*: Class 1(b) is an impaired class, and the holder of the Class 1(b) claim is entitled to vote to accept or reject the Plan.

Class 1(c) –Secured Claim of Bank of America

(a)     *Classification*: Class 1(c) consists of the Secured Claim of Bank of America against the Debtor's property located at 2000 Windward Point, Discovery Bay, California, which is secured by a lien against the Debtor's residential property, loan number ********6070.

(b)     *Treatment*: The holder of the allowed Class 1(c) Secured Claim shall be impaired and paid in accordance with its election under Section 1111(b) of the Bankruptcy Code.  Any prepetition default is hereby cured under the treatment in the Plan.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second the contract between the parties, and last, if necessary or applicable, state law.

(c)     *Valuation*: The Class 1(c) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy

Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the plan shall set forth the values of each secured creditor's first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 1(c) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 3 below.

(e)    *Voting*: Class 1(c) is an impaired class, and the holder of the Class 1(c) claim is entitled to vote to accept or reject the Plan.

Class 1(d) –Secured Claim of First Federal Bank.

(a)    *Classification*: Class 1(d) consists of the Secured Claim of First Federal Bank against the Debtor's property located at 317 Harriet Street, San Francisco, California 94103, which is secured by a lien against the Debtor's residential property, loan number ********1812.

(b)    *Treatment*: The holder of the allowed Class 1(d) Secured Claim shall be impaired and paid the allowed amount of its claim of $750,000.00 as set forth in **Exhibit 1** attached to the Plan, paid at an interest rate of 4.75% over 30 years directly to Chase, with a monthly principal and interest payment of $3,912.36.  Any prepetition default is hereby cured under the treatment in the Plan.  In the event of a default post-confirmation, the secured creditor shall first comply with all default procedures set forth in the Plan, second the contract between the parties, and last, if necessary or applicable, state law.

(c)    *Valuation*: The Class 1(d) Secured Claim shall be revalued on the effective date of this Plan, pursuant to sections 1123 and 506 of the Bankruptcy Code, in accordance with the appraised value of such property as set forth on **Exhibit 1** of the Plan.  The confirmation order approving the plan shall set forth the values of each secured creditor's first lien claim as of the effective date of the Plan.

(d)    *Unsecured Portion of the Claim*: Any amount of a Class 1(d) claim that is deemed to be unsecured in accordance with section (c) above shall be afforded the treatment set forth in Class 3 below.

(e)    *Voting*: Class 1(d) is an impaired class, and the holder of the Class 1(d) claim is entitled to vote to accept or reject the Plan.

2.02    Class 2 – Priority Claims

(a)    *Classification*: Class 2 consists of the Priority Claims against the Debtor.

(b)    *Treatment*:  The legal, equitable and contractual rights of the holders of

allowed Class 2 Claims are unaltered.  Except to the extent that a holder of an allowed Class 2 claim has been paid by the Debtor prior to the effective date of this Plan or otherwise agrees to different treatment, each holder of an allowed Class 2 Claim shall receive, in full and final satisfaction of such allowed Class 2 claim, payment in full in cash on or as soon as reasonably practicable after (i) the effective date of the Plan, (ii) the date such allowed Class 2 claim becomes allowed or (iii) such other date as may be ordered by the Bankruptcy Court.

(c)     *Voting*: Class 2 is an unimpaired Class, and is deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  The holders of Class 2 claims are not entitled to vote to accept or reject the Plan.

2.03     Class 3 - General Unsecured Claims

(a)     *Classification:* Class 3 consists of General Unsecured Claims against the Debtors.

(b)     *Treatment:*  Holders of allowed General Unsecured Claims shall receive, in full and final satisfaction of such allowed Class 3 claims, their pro rata share of the Debtors' monthly plan payments, which the Debtors estimate to be 2% of such creditor's claim.

(c)     *Voting:* Class 3 is an impaired Class, and holders of Class 3 claims are entitled to vote to accept or reject the Plan.

ARTICLE III

TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS.
U.S. TRUSTEES FEES AND PRIORITY TAX CLAIMS

3.01     Unclassified Claims. In accordance with section 1123(a)(1) of the Bankruptcy Code, administrative expense claims, and priority tax claims are not in classes.

3.02     Administrative Expense Claims. Each holder of an administrative expense claim allowed under Section 503 of the Bankruptcy Code will be paid in full on the effective date of this Plan, in cash, through the Debtor's monthly plan payments, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03     Priority Tax Claims. Each holder of a priority tax claim will be paid in full on the effective date of this Plan.

3.04     United States Trustee Fees. All fees required to be paid by 28 U.S.C. § 1930 will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the Effective Date.

ARTICLE IV
PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

4.01     Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor shall assume, on the effective date of this Plan, the executory contracts and unexpired leases listed on **Exhibit 2** attached hereto.  Listed on **Exhibit 2** is also the Debtor's estimated cure amount, if any, necessary to assume such contract in accordance with Section 365 of the Bankruptcy Code.

(b)  With respect to any property relating to any and all executory contracts and/or unexpired leases assumed hereunder, the Debtors expressly reserve the right to sell such property in accordance with Section 363 of the Bankruptcy Code or to abandon and/or execute a deed in lieu of foreclosure for such property in accordance with Section 554 of the Bankruptcy Code.

(c) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 4.01(a) above.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

(d) The confirmation order shall constitute an order of the Bankruptcy Court approving such assumptions pursuant to sections 365 and 1123 of the Bankruptcy Code as of the effective date of this Plan.  The Debtor reserves the right to amend **Exhibit 2** at any time before the effective date.

(e) Any objection by a party to an executory contract or unexpired lease to the Debtor's proposed assumption or any related cure amount set forth on **Exhibit 2** must be filed, served and actually received by the Debtor at least five (5) days prior to the confirmation hearing of this Plan.  Any party to an executory contract or unexpired lease that fails to object timely to the proposed cure amount will be deemed to have consented to such assignment of its executory contract or unexpired lease.  The confirmation order shall constitute an order of the Bankruptcy Court approving any proposed assignments of executory contracts or unexpired leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

(f) In the event of a dispute regarding (i) the amount of any cure payment, (ii) the ability of the Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assigned or (iii) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a final order or orders resolving the dispute and approving the assumption.  If an objection to a cure amount is sustained by the Bankruptcy Court, the Debtor at his sole option, may elect to reject such executory contract or unexpired lease in lieu of assuming it.

ARTICLE V - MEANS FOR IMPLEMENTATION OF THE PLAN

5.01     Source of Payments. If an objection to the Plan is lodged under Section 1129(a)(15) of the Bankruptcy Code, the Debtor's Payments and distributions under the Plan will be funded by

the Debtor, based upon his (a) projected monthly rental income and (b) personal income. The Cash Flow Analysis, attached the Disclosure Statement as **Exhibit C**, outlines the Debtor's sources and uses of income. The Debtor's monthly Plan payment shall be $500.00. If no objections are lodged to the Plan, the Debtors may make elect to make no distributions to general unsecured creditors in accordance with Section 1129(a)(15) of the Bankruptcy Code.

5.02    Method of Plan Payments

(a)    On or about the effective date of the Plan, to the extent necessary, the Debtor shall retain Cynthia Bitaut of Baxter Distribution Services, LLC, 6623 Las Vegas Boulevard, South, Suite 300, Las Vegas, Nevada 89119 as his disbursement agent (the "**Disbursement Agent**"). Except as otherwise provided in the Plan, upon confirmation, the Debtor shall begin making monthly distributions to the Disbursement Agent under the Plan. The Disbursement Agent shall begin, as soon as practical, making pro rata payments to the Debtor's unsecured creditors holding allowed claims, on a quarterly basis, until such claims are paid as set forth in the Plan.

(b)    Except as otherwise provided in the Plan, or upon the entry of a final, non-appealable order of the Bankruptcy Court, or as agreed to by the relevant parties, distributions under the Plan on account of a disputed claim that becomes an allowed claim after the effective date of the Plan shall be begin on the regular quarterly payment date, as established by the Disbursement Agent, which is at least thirty (30) days after such claim becomes an allowed claim.

(c)    Notwithstanding anything in the Plan to the contrary, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or a final order of the Bankruptcy Court. In the event that there are disputed claims requiring adjudication and resolution, the Disbursement Agent shall establish appropriate reserves for potential payment of such Claims.

(d)    In no event, however, shall the Disbursement Agent be held liable for any failures of the Debtor to make any of his payments required under the Plan. If any holders of allowed claims against the Debtor's estate fail to receive payment in accordance with the Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all matters related to the implementation of this Plan and the payments required hereunder.

(e)    The Disbursement Agent shall manage the Debtor's post-confirmation estate, if any, and all payments under this Plan in the ordinary course as the Disbursement Agent sees fit, in his reasonable business judgment, including the retention of professionals and without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the confirmation order

5.03    The Holding Company. On or after the effective date of the Plan, the Debtor may transfer title to his property to a Nevada limited liability company (the "**Holding Company**"), for liability purposes. The transfer shall not limit the Debtor's personal liability to his creditors or his obligations to make payments under this Plan.

5.04    Post-confirmation Management.  The Debtor will manage his properties post-petition in the ordinary course.  He will be authorized to enter into, terminate and renew lease agreements as he sees fit.  Such activities will include retaining management companies to aid in the renting of their property, drafting and serving eviction notices, negotiating loan modifications or refinancing their properties, repairing the properties and maintaining a reserve account of up to one month's mortgage payments, or $10,000.00, whichever is greater.  In addition, the Debtor will be authorized to transfer the properties to the Holding Company to limit his liability from claims arising from their rental business (such as injuries occurring at the homes) after the date of confirmation.

ARTICLE VI
GENERAL PROVISIONS

6.01    Definitions and Rules of Construction. The definitions and rules of construction set forth in Sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

6.02    Effective Date of Plan. The effective date of this Plan is the fifteenth business day following the date of the entry of the confirmation order. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

6.03    Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan.  The Court, however, may require a new Disclosure Statement and/or re-voting on the Plan. The Debtor may also seek to modify the Plan at any time after confirmation only if the Court authorizes the proposed modifications after notice and a hearing.

Upon request of the Debtor, the Plan may be modified at any time after confirmation of the Plan, but before the completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take on accounting of any payment of a claim made other than under the Plan.

Effective as of the date hereof and subject to the limitations and rights contained in the Plan: (a) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the confirmation order; and (b) after the entry of the confirmation order, the Debtor may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan; provided, however, that any modification to the Plan shall not affect the rights or treatment of holders of unsecured claims.

6.04    Final Decree.  Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of bankruptcy Procedure, the Debtor, or such other party as the Court shall

designate in the Plan confirmation order, may file a motion with the Court to obtain a final decree to close the case. Alternatively, the Debtor may move for the entry of a final decree to close the case upon the Plan's substantial consummation or the Court may enter such a final decree on its own motion.

6.05    Vesting of Assets in the Reorganized Debtor and the Holding Company. After confirmation of the Plan, all property of the Debtor shall vest in the reorganized Debtor and the Holding Company, free and clear of all liens, claims, charges or other encumbrances, except those enumerated in the order approving the Motions to Value and the confirmation order. The reorganized Debtor may operate his rental business and may use, acquire or dispose of property and compromise or settle any claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the confirmation order. Without limiting the foregoing, the Debtor shall pay the charges that he incurs after confirmation for professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of professional fee applications) without application to the Bankruptcy Court.

6.06    Release of Liens, Claims and Equity Interests. Except as otherwise provided herein or in the following sentence, or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, upon confirmation, all liens, claims, mortgages, deeds of trust, or other security interests against the property of the Debtor's estates shall be fully released and discharged, including all in personam claims against the Debtor. The existing liens and lien rights of those lenders holding claims in Classes 1 through 15 are expressly preserved under the Plan, and their existing liens shall ride through and remain attached to any and all underlying collateral in any transfer of property expressly set forth in, or contemplated by, the Plan. To the extent any provision in this Plan or the Confirmation Order can be read to contradict the express preservation of lien rights in this provision, this provision controls.

6.07    Certificate of Incorporation and Bylaws. The articles of organization and bylaws (or other formation documents) of the Holding Company shall be amended as may be required to be consistent with the provisions of the Plan and the Bankruptcy Code or as otherwise required by, and in a form reasonably acceptable to, the Debtor. On or as soon as reasonably practicable after confirmation of the Plan, the reorganized Debtor shall file a new certificate of organization with the Nevada secretary of state, as required by section 1123(a)(6) of the Bankruptcy Code.

6.08    Effectuating Documents; Further Transactions. The Debtor may take all actions to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

6.09    Exemption from Certain Transfer Taxes. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the confirmation order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.

6.10    Revocation of Plan. The Debtor reserve the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans.  If the Debtor revokes or withdraws the Plan, or if confirmation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Court; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, the Debtor or any other entity; (b) prejudice in any manner the rights of the Debtor or any other entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor or any other entity.

6.11    Successors and Assigns. The rights, benefits and obligations of any entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

6.12    Reservation of Rights. Except as expressly set forth herein, the Plan shall have no force or effect until the Court enters the confirmation order.  Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by a Debtors or any other entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtors with respect to the holders of claims or other entity; or (2) any holder of a Claim or other entity prior to the effective date of the Plan.

6.13    Further Assurances. The Debtor or the reorganized Debtor, as applicable, all holders of Claims receiving distributions under the Plan and all other entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the confirmation order.

6.14    Severability. If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, *provided* that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtor, and, to the extent such alteration or interpretation affects the rights or treatment of holders of unsecured claims, such claim holder.

6.15    Return of Security Deposits.  Unless the Debtor agrees otherwise in a written agreement or stipulation approved by the Court, all security deposits provided by the Debtor to any person or entity at any time after the petition date shall be returned to the Debtor within twenty (20) days after the date of confirmation, without deduction or offset of any kind.

6.16    Filing of Additional Documents. On or before the Effective Date, the Debtor may file with the Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

6.16    Captions. The headings contained in this Plan are for convenience of reference only and

do not affect the meaning or interpretation of this Plan.

6.17    Default.   Upon the Effective Date of the Plan, in the event the Debtor fails to timely perform any of the obligations set forth in the Plan, the applicable creditor or party-in-interest shall notify the Debtor and the Debtor's counsel of the default in writing in accordance with the notice provisions herein, after which the Debtor shall have: (i) thirty (30) calendar days from the date of the written notification to cure the default; or (ii) if the cure requires more than thirty (30) days, so long as the Debtor initiates steps to cure the default within thirty (30) days and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.  If the Debtor fails to timely cure the default as provided above, the applicable creditor shall be free to pursue any and all rights it may have under the contract(s) between the parties and/or applicable state law, without further court order or proceeding being necessary.

ARTICLE VII
DISCHARGE

**7.01 Discharge.** Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments to unsecured creditors under this Plan, which is 5 years or 20 quarterly payments, and as provided in § 1141(d)(5) of the Code.  The Debtors will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Dated:  May 10, 2013

Respectfully submitted,

Gary S. Kibizoff

/s/ Gary S.Kibizoff